**IT IS ORDERED as set forth below:**



**Date: March 15, 2019**

_____

Paul W. Bonapfel
U.S. Bankruptcy Court Judge

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| THOMAS JOHNSON, | CASE NO. 18-59862-PWB |
| Debtor. | |
| | CHAPTER 7 |
| BMW BANK OF NORTH AMERICA, | |
| Plaintiff, | |
| | ADVERSARY PROCEEDING |
| v. | NO.  18-5224-PWB |
| THOMAS JOHNSON, | |
| Defendant. | |

ORDER

BMW Bank of North America ("BMW") financed the purchase of a 2017 Maserati Levante 3.0L by the Debtor. BMW seeks a determination that this debt is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6). Based upon the Debtor's failure to respond, BMW requests entry of default judgment on its claims. For the reasons stated herein, the motion for default judgment is granted in part and denied in part.

BMW alleges that on July 8, 2017, the Debtor purchased a 2017 Maserati Levante 3.0L (the "Vehicle") from it. The Motor Vehicle Retail Installment Contract attached to the Complaint reflects that that the Debtor purchased the Vehicle at BMW of Gwinnett Place for a cash price of $75,550.00. After other purchase-related expenses and a down payment of $2,500.00, the Debtor financed $79,181.86 at 7.05 % per annum to be paid at the rate of $1,355.85 per month for 72 months beginning August 22, 2017. The Contract reflects that the Vehicle was intended for the Debtor's personal use.

In the Consumer Credit Application, the Debtor disclosed his occupation as "Biochemist" earning a gross annual salary of $188,000.00. It is unclear whether BMW did anything to verify this representation.

BMW asserts that it has not received a payment from the Debtor since November 27, 2017.

Less than a year after the purchase, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. The Debtor's schedules reflect gross monthly

2

income of $3,500 per month. The Debtor's response to Question Four on the Statement of Financial Affairs regarding annual income for the past two years discloses no income.

Although the Debtor's schedules list the Vehicle as an asset, BMW asserts that it has been unable to locate it since October 2017 and that the Debtor informed it on July 26, 2018, that an unidentified person previously had possession of the Vehicle, but he was now incarcerated. BMW alleges that the Debtor admitted that he did not know where the Vehicle was located or who had possession of it.

BMW contends that the debt arising from the purchase of the Vehicle is excepted from the Debtor's discharge because it was incurred by fraud (§ 523(a)(2)(A) and (a)(2)(B)) and because the Debtor caused a willful and malicious injury to BMW and its property (§ 523(a)(6)). The Court shall examine each claim in turn.

## I.   Section 523(a)(2)

BMW asserts that its debt is excepted from discharge under both § 523(a)(2)(A) and § 523(a)(2)(B) because the Debtor intended to deceive it by making a false representation (§ 523(a)(2)(A)) and by making a materially false statement in writing regarding his financial condition (§ 523(a)(2)(B)).

A. <u>Section 523(a)(2)(A)</u>

Section 523(a)(2)(A) provides that a debt is excepted from discharge to the extent it is for money or an extension of credit to the extent obtained by "false

3

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is excepted from discharge.

A "false pretense" is an "implied misrepresentation or conduct which creates and fosters a false impression." *In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) (citations omitted). Events that "create a contrived and misleading understanding of a transaction in which a creditor is wrongly induced to extend money or property to the debtor" may constitute false pretenses. *Id*. Conversely, a false representation is one in which there is an *express* misrepresentation of fact. *See, e.g., Carlan v. Dover (In re Dover)*, 185 B.R. 85, 88 n.3 (Bankr. N.D. Ga. 1995).

The traditional elements of a claim for fraud are (1) the debtor made a representation; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff sustained damages as a result of the representation. *Field v. Mans*, 516 U.S. 59 (1995).

Actual fraud is not limited to a representation; it is a much broader term than false pretenses or false representation and may encompass "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (citations omitted). The common element to false pretenses, false representation, and actual fraud is an intent to deceive by the debtor." *FDS National Bank v. Alam (In re Alam)*, 314 B.R. 834 (Bankr. N.D. Ga. 2004).

4

Although § 523(a)(2)(A) does not expressly so provide, the false representation must be material. *Field v. Mans,* 516 U.S. at 68. ("If Congress really had wished to bar discharge to a debtor who made unintentional and wholly immaterial misrepresentations having no effect on a creditor's decision, it could have provided that. It would, however, take a very clear provision to convince anyone of anything so odd, and nothing so odd has ever been apparent to the courts that have previously construed this statute, routinely requiring intent, reliance, and materiality before applying § 523(a)(2)(A).").

BMW contends that the Debtor knowingly and intentionally misrepresented to it that he was purchasing the Vehicle for his own personal use, when instead he was acting as a straw buyer for another individual or individuals. BMW asserts that it relied on this false representation and suffered damages as a result.

The "representation" BMW refers to is actually a box on the Contract that permits the parties to indicate whether the Vehicle is for "personal use" or "business use." The "personal use" box is checked on the Contract.

If the only false representation was the checking of a box marked "personal use" as opposed to "business use," the Court would not be inclined to conclude that such a representation was sufficiently material to warrant excepting the debt from discharge under § 523(a)(2)(A). But this misrepresentation, coupled with the assertion that the Debtor was a "straw buyer" for another individual at the inception of the contract, satisfies the definition of actual fraud which includes "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent

5

and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (citations omitted). Importantly, the Debtor has not controverted this assertion.

Based on the foregoing, the Court concludes that the debt in the amount of $80,201.19 owed by the Debtor to BMW arising from the purchase of a 2017 Maserati Levante 3.0L is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

B. Section 523(a)(2)(B).

Section 523(a)(2)(B) provides an exception from discharge of a debt for money or an extension of credit to the extent obtained by "use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive." The primary differences between subparagraphs (A) and (B) of § 523(a) is that subparagraph (B) requires a specific type of misrepresentation (written and regarding the debtor's financial condition) and a heightened level of reliance (reasonable).

BMW asserts that the Debtor made a false written representation on his credit application that he was employed by WSA as a biochemist with a gross annual income of $188,000.00. BMW asserts that the falsity of the statement is established by the Debtor's sworn statement of financial affairs that reflects no income for the

6

year 2017 or later and that the false statement reflects an intent to deceive it in order to obtain financing for the purchase of the Vehicle.

These facts are uncontroverted and establish certain elements of BMW's § 523(a)(2)(B) claim.  But BMW must also establish that its reliance on the Debtor's written statement was reasonable.

Reasonable reliance "connotes the use of the standard of ordinary and average person." *In re Vann*, 67 F.3d 277, 280 (11th Cir. 1995). A court must evaluate the reasonableness of a creditor's reliance based on circumstances of particular case and should consider: "whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." *Id.*

BMW has asserted no facts or circumstances to support the bare assertion in the complaint that its reliance was reasonable. The issue of reasonable reliance is generally a question of fact and it involves the credibility of the parties.  The Court cannot conclude based on the allegations in the complaint that BMW's reliance was reasonable or unreasonable under the circumstances.  As a result, the Court declines to enter default judgment on this claim.

## II.     Section 523(a)(6)

In relevant part, § 523(a)(6) provides that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is non-

7

dischargeable. "Willful" in this provision means "a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). "Malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will." *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quotation omitted). To establish malice, "a showing of specific intent to harm another is not necessary." *Id.* (quotation omitted). Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice. *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989).

Willful and malicious injury may include conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights. *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir.1995); *see Adler v. Hertling*, 215 Ga.App. 769, 772, 451 S.E.2d 91, 96 (1994) (under Georgia law, conversion "consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation."). Conversion of collateral may form the basis of a claim under § 523(a)(6), but a willful and malicious injury "does not follow as of course from every act of conversion, without reference to the circumstances." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934).

BMW asserts that the Debtor's apparent transfer of possession of the Vehicle to another individual, now incarcerated, and his failure to identify the location of the

8

Vehicle constitutes a conversion of the vehicle. As noted above, not all conversions of collateral state a claim under § 523(a)(6). This is because an "unauthorized" exercise of control over personal property could be innocent or negligent, but not willful and malicious. Thus, it is necessary to consider all the circumstances surrounding the act of conversion.

In this case it is undisputed that the Debtor surrendered or transferred possession of a $75,000 Vehicle to another individual who is now incarcerated and that the Debtor has failed to account for it to BMW. These facts, coupled with the uncontroverted facts that the Debtor lied about his income on the credit application and his intent to use the Vehicle for personal use, permit the court to conclude that the Debtor's conversion of the Vehicle was willful and malicious and is excepted from discharge pursuant to § 523(a)(6).

### III.  Conclusion

Based on the foregoing, the Court concludes that the debt in the amount of $80,201.19 owed by the Debtor to BMW arising from the purchase of a 2017 Maserati Levante 3.0L is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The Court, in its discretion, declines to enter default judgment on BMW's claim under § 523(a)(2)(B). Accordingly, it is

ORDERED that the motion for default judgment is granted in part and denied in part. The debt in the amount of $80,201.19 owed by the Debtor to BMW arising from the purchase of a 2017 Maserati Levante 3.0L is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The Court, in its discretion,

9

declines to enter default judgment on BMW's claim under § 523(a)(2)(B). A separate judgment shall be entered contemporaneously herewith.

**This Order has not been prepared for publication and is not intended for publication.**

### END OF ORDER

**Distribution List**

Leon S. Jones
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309

Thomas Johnson
105 Valley Brook
Covington, GA 30016